IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN R. WILKERSON, #309-649         *
    Plaintiff,
                                          *

v.                                  CIVIL ACTION NO. JFM-06-2649
                                          *
WARDEN, et al.
    Defendants.                       *
******

## MEMORANDUM

This is a civil rights case filed by plaintiff, a state inmate, asserting a civil rights claim under 42 U.S.C. §1983 for deliberate indifference to a serious medical need. Paper No. 1. Counsel for defendants have filed dispositive motions.[1] Paper Nos. 7 and 12. Plaintiff has responded. Paper Nos. 14 and 16. No hearing is needed to resolve the question as to whether plaintiff is entitled to relief. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, defendants' Motions to Dismiss and/or for Summary Judgment, construed as a summary judgment motions, shall be granted.

### 1. Background

Plaintiff states that on July 21, 2006, he was moved from a cell where he had been afforded "bottom bunk" status to another cell where he was assigned the top bunk. He states that while climbing into the top bunk, he fell. He claims that he has been improperly denied adequate medical

---

[1] Also pending are plaintiff's Motions for Enlargement of Time to file a response to defendants' dispositive motions which shall be granted, nunc pro tunc. Paper Nos. 11 and 15.

Plaintiff has also filed a Motion for Appointment of counsel. Paper No. 10. This federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). The court finds from its review of the complaint and opposition responses prepared by plaintiff that he is able to adequately articulate the facts and grounds for relief in the instant matter without notable difficulty. Furthermore, the court concludes that plaintiff's complaint is not of undue complexity. Therefore, in the exercise of its discretion, the court shall deny plaintiff's request for appointment of counsel.

care for the injuries he sustained as a result of his fall.[2] Paper No. 1. He also states that Dr. Tessema improperly denied him the use of a cane or knee brace. *Id*.

The uncontroverted records before the court demonstrate that plaintiff was examined by medical staff at 12:30 a.m. on July 22, 2006, as a result of falling in his cell. Pamela Miller, RN found no visible injury and no bleeding but noted plaintiff suffered from motor and sensory weakness. He was prescribed acetaminophen. Neurological checks were instituted every fifteen minutes with a plan to send plaintiff back to his housing unit if the check was not abnormal. *Id*. Ex. B, p. 1-3, 38. A cervical collar was placed on plaintiff's neck and he was positioned on a backboard to minimize movement of his spinal column. *Id*. Plaintiff's leg strength improved by 2:00 a.m.

At approximately 9:00 a.m. that same day, plaintiff was evaluated by Physician Assistant Carkin. Plaintiff denied numbness of the upper extremities and back pain. Medical and correctional staff observed plaintiff moving without apparent difficulty and without assistance from approximately 7:00 a.m. to 9:00 a.m. Plaintiff's neurological examination was normal. Carkin's assessment was that plaintiff suffered a cervical strain. Carkin consulted with Dr. Tessema telephonically. Dr. Tessema ordered plaintiff returned to his housing unit and prescribed an anti-inflammatory and muscle relaxant. Dr. Tessema recommended x-rays of the spine be taken and plaintiff return to see him the following Monday. *Id*., p. 4. 39.

---

[2] An Eighth Amendment claim arising from the denial of a medically authorized bottom bunk status by correctional staff is not properly before the court. Plaintiff has failed to plead who, if anyone, he notified as to his need to be placed on a bottom bunk and/or whether he filed any administrative remedies as to that issue. He describes, for the first time in his opposition to the medical defendants' dispositive motion, alerting correctional officers who are not named as parties to these proceedings that he was entitled to bottom bunk status prior to his fall. Paper No. 12.

On July 25, 2006, Dr. Tessema issued an order which discontinued plaintiff's use of a walking cane because plaintiff was able to ambulate without it.[3] *Id.*, p. 40, Ex. A. Paper No. 12, Ex., 1. On July 26, 2006, Nurse Williams signed an order that plaintiff be assigned a flat bottom bunk and be permitted to have a cane during his transfer to the Baltimore region for a court appearance. Paper No. 7, Ex. A, Ex. B, p. 5.

On August 2, 2006, plaintiff submitted a sick calls lip complaining of upper and lower back pain and neck pain. Medical personnel noted that his bottom bunk status expired and referred him to be seen in the Chronic Care Clinic ("CCC"). *Id.*, p. 6. Plaintiff was evaluated by Dr. Tessema in the CCC on August 4, 2006. Dr. Tessema's notes from the examinations did not address plaintiff's complaint of back and neck pain. Nonetheless, plaintiff's prescription for pain reliever was renewed. *Id.*, p. 7-9, 41.

Plaintiff submitted another sick call slip on August 9, 2006, complaining of back and neck pain. He was evaluated by medical staff on August 13, 2006. Examination revealed an adequate range of motion. Plaintiff submitted sick call slips on August 22 and 23, 2006, again complaining of pain in his back and neck. *Id.*, p. 11 and 12.

On August 25, 2006, plaintiff was examined by Anna Hammond, NP, who noted tenderness in plaintiff's posterior neck and paravertebral muscles with no radiation. She also noted a full range

---

[3] Accordingly to plaintiff he had previously been permitted to use a cane due a prior knee surgery. Plaintiff takes issue with the date he allegedly was observed exercising and walking without cane. He states that he was not housed at WCI on the date the cane was discontinued and therefore it was not possible for a correctional officer to have observed him playing horseshoes in the yard. Plaintiff's objection is, however, belied by his own exhibits. Plaintiff has provided to the court an information report written by a correctional officer on July 20, 2006, which states plaintiff was observed playing horse shoes in the exercise yard and ambulating without use of the cane. The report and video tape were referred to Dr. Tessema for further action. Paper No. 12, Ex. 1. Plaintiff has also attached to his opposition a traffic report which shows that he was housed at WCI on July 21, 2006. He was not transferred from WCI for his court appearance until July 24, 2006.

of motion in plaintiff's neck with pain. Plaintiff was assessed as suffering from back strain/sprain with a note to rule out a bone injury. X-rays were re-ordered of the neck and back and plaintiff was prescribed an anti-inflammatory and muscle relaxant. *Id.*, p. 13, 42. The x-rays, taken on August 29, 2006, and read on August 31, 2006 by the radiologist. The x-rays revealed mild degenerative disk disease in plaintiff's cervical and lumbar spine. *Id.*, p. 14. Dr. Tessema avers that there is no surgical treatment for this condition; rather, treatment is provided with pain relievers and muscle relaxants. *Id.*, Ex. A.

Plaintiff next submitted a sick call slip on August 29, 2006, complaining of pain in his right arm and hand due to a correctional officer twisting his arm while cuffing plaintiff in the back. Plaintiff requested a medical order that he be cuffed only in front. Plaintiff was referred to the nurse practitioner for follow-up and was seen on September 8, 2006. Plaintiff continued to complain of tenderness in his neck. He advised the nurse that the medication prescribed helped his pain but upset his stomach. His pain medication was changed and an order was entered for plaintiff to be cuffed in front indefinitely. *Id.*, Ex. B, p. 17, 43.

On September 14, 2006, plaintiff submitted a sick call slip complaining of continuing pain in his neck and back with tingling in his lower legs, feet, shoulders and hands. He requested that his prescription be changed. *Id.*, p. 19. Plaintiff's next sick call slip was submitted on September 22, 2006. Plaintiff again complained of pain in his neck and back and additionally complained of fluid on his knee. Plaintiff was examined on September 24, 2006, and referred to a clinician for reevaluation of his back injury. *Id*, p. 20. Plaintiff was next seen on October 11, 2006, as a result of a sick call slip submitted on October 5, 2006, wherein he continued to complain of pain in his neck and back. Plaintiff indicated that the prescribed medication continued to upset his stomach.

Plaintiff was examined by LPN Susan Lahman on October 12, 2006, for a sore on his foot. LPN Lahman observed a red, swollen, raised area on the top of plaintiff's right foot and thick yellow purulent drainage with blood tinging. The drainage was cultured and the area was dressed per Methicillin - resistant Staphylococcus aureus ("MRSA") protocol. *Id*, p. 22. An antibiotic and daily dressing changes were prescribed. *Id.*, p. 44.  On October 15, 2006, plaintiff was again seen regarding the sore on his foot. *Id.*, p. 23, 45. Plaintiff was prescribed a basin in which to soak his foot. *Id.*, p. 24. On October 15, 2006, medical staff was called to plaintiff's cell. He was suffering from a fever and had vomited. Plaintiff was provided Tylenol. *Id*, p. 25.

On October 18, 2006, plaintiff declined to come to his scheduled physician's sick call appointment because he said he could not walk. Plaintiff was prescribed crutches and his appointment was rescheduled. *Id*, p. 26-27, 46. Plaintiff was again evaluated by Nurse Practitioner Hammond on October 20, 2006 due to the infection on his foot and complaints of lower back pain. He was diagnosed as suffering from osteoarthritis and the back was noted to be tender to palpation with no radiation. In addition to continued treatment for his foot sore, plaintiff was continued on Ibuprofen and a muscle relaxer. *Id*. p. 29, 47.

Plaintiff submitted another sick call slip on October 22, 2006. He was evaluated on October 27, 2006, by medical staff and a note was entered indicating that plaintiff would be followed up by Dr. Tessema. *Id.*, p. 30   Plaintiff was seen by Dr. Tessema on October 25, 2006, regarding the MRSA infection on his foot. *Id*. p. 31. Plaintiff was again seen by Dr. Tessema on November 1, 2006, also for follow up regarding the MRSA infection. The doctor noted that the infection had cleared and plaintiff was educated on the prevention of skin infection. *Id.*, p. 32.

An order was entered by Nurse Practitioner Hammond on November 10, 2006, continuing plaintiff's pain reliever and muscle relaxant. Further orders were entered to permit plaintiff the use of an egg crate mattress and an extra pillow. He was also referred for a physical therapy evaluation for degenerative disk disease of his cervical and lumbar spine to decrease pain and increase mobility. *Id.*, p. 48. On November 16, 2006, an order was entered for physical therapy three times a week for four weeks to plaintiff's cervical and lumbar spine. *Id.*, p. 49.

Plaintiff's next sick call slip, filed on November 18, 2006, complained of pain in his right arm after having been caught in the feed up slot. *Id.*, p. 33-35. Plaintiff submitted a second slip call on November 18, 2006, complaining that the medication prescribed was not helping his back pain and inquiring as to why he had not seen a physician and/or begun physical therapy. A note is attached to the sick call slip dated November 24, 2006, which notes "Getting PT for Back pain." *Id.*, p. 36.

On November 29, 2006, an Order was entered discontinuing plaintiff's physical therapy because plaintiff had signed off and did not want to go. *Id.*, p. 50. Plaintiff's sick call slip dated November 30, 2006, asks to be referred to a back and neck specialist and states that he quit physical therapy because of the pain. Plaintiff was again evaluated by medical staff on December 10, 2006. No swelling or bruising was noted. Plaintiff's range of motion was good but painful. Plaintiff was given Tylenol and referred to a physician for follow up. *Id.* p. 37.

### 2. Standard of review

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In making this determination, the

evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997) (citing *Anderson,* 477 U.S. at 255). The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir. 1991). The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252.

### 3. Analysis

A.  **Respondeat Superior**

Plaintiff has alleged no personal involvement by Warden Jon P. Galley. Rather, plaintiff appears to contends in his complaint that the Warden is properly named because he exercises supervisory authority over other named defendants.[4] Paper No. 1.

In order for supervisory liability to exist in a §1983 action it must be established:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

---

[4]   Such liability would be premised on the legal doctrine of respondent superior. The doctrine of *respondeat superior* does not apply to actions under 42 U.S.C. §1983. *See Monell v. New York Dept. of Social Services,* 436 U.S. 658, 691 (1978).

To the extent plaintiff is claiming that these officials were indifferent to actions taken by staff, he has failed to state a claim. Deliberate indifference is more than negligence. As one court explained:

> Generally, a failure to supervise gives rise to a §1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel. A single act or isolated incident are normally insufficient to establish supervisory inaction upon which to predicate §1983 liability.

*Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (citations and footnote omitted).

Plaintiff has not pointed to any specific action or inaction on the part of the Warden that in any way contributed to his injuries. Plaintiff notes that he filed a series of Administrative Remedy Requests notifying the Warden of his concerns regarding his medical care. Supervisory officials are, however, entitled to rely on medical judgments made by prison physicians. *See Miltier v. Beorn*, 895 F. 2d 848, 854-55 (4th Cir. 1989); *see also Shakka v. Smith*, 71 F. 3d 162, 167 (4th Cir. 1995).

**B.   Eighth Amendment**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S.294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff

8

were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The records before the court demonstrate that defendants have not acted with indifference to plaintiff's medical needs. Rather, plaintiff simply disagrees with the medical and professional judgment of the medical staff at WCI. There is no dispute that plaintiff fell in his cell. There is also no dispute that plaintiff suffers from degenerative disc disease. Plaintiff's medical providers believe

that a conservative course of treatment including pain reliever, muscle relaxers, and physical therapy is all that is required to treat his condition. Plaintiff disagrees, and believes he should have been examined more regularly by Dr. Tessema rather than nurses or physicians assistants and that the x-rays of his spine should have been taken in a more timely fashion. Such disagreements with a course of treatment do not provide the framework for a federal civil rights complaint but rather, at most, state a claim for negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975). The court simply cannot find from the uncontroverted medical records before it that the medical care received by plaintiff was so egregious as to constitute an Eighth Amendment violation.

### 4. Conclusion

For all the foregoing reasons, defendants' motions for summary judgment shall be granted. A separate Order follows.

March 30, 2007
Date

/s/
J. Frederick Motz
United States District Judge